**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| ALBERT DOUGLAS, *individually and on behalf* *all others similarly situated*, )<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>LEXISNEXIS RISK & ANALYTICS )<br>SOLUTIONS, INC., )<br>)<br>Defendant. ) | Case No. __3:17cv301_____ |

# CLASS ACTION COMPLAINT

Albert Douglas ("Plaintiff"), by and through his attorneys, individually and on behalf of all others similarly situated, brings this Complaint against Defendant Risk & Analytics Solutions, Inc., ("Defendant").

## PRELIMINARY STATEMENT

1. Recognizing that employers, lenders, and landlords use consumer reports to deny people jobs, credit, and housing, Congress enacted the Fair Credit Reporting Act ("FCRA") to ensure that "consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." 15 U.S.C. § 1681(a)(4). To accomplish these ends, one of the core requirements of the FCRA prohibits consumer reporting agencies from furnishing consumer reports containing outdated information, including bankruptcy cases that "antedate the report by more than 10 years" from "the date of entry of the order for relief or the date of adjudication[.]" 15 U.S.C. § 1681c(a)(1). With the § 1681c, Congress sought to ensure that "irrelevant and outdated information" was removed from consumers' files. H.R. 15627, 90th Cong. (2nd Sess. 1968).

2. Defendant is a consumer reporting agency that has "amassed the largest, most

comprehensive base of information in the world today."[1] Nevertheless, Defendant knowingly furnishes obsolete information regarding consumers such as the Plaintiff, who was denied a home equity line of credit in July 2016 because Defendant furnished a consumer report to his potential lender, Capital One, N.A., that contained a multiple bankruptcies that had been discharged more than ten years prior to his application for credit. Rather than complying with § 1681c, Defendant takes an untenable legal position that it does not provide "consumer reports" as defined and regulated by the FCRA. Defendant's position disregards the plain language of the FCRA. Accordingly, Plaintiff brings a class claim because Defendant systematically fails to comply with § 1681c.

3. Plaintiff further alleges a class claim pursuant to § 1681g(a)(3), which requires consumer reporting agencies to clearly and accurately disclose to consumers "identification of each person" that "procured a consumer report" regarding the consumer within the past year. 15 U.S.C. § 1681g(a)(3)(A). Defendant omits this information so consumers do not know who obtained their consumer reports and, thus, to avoid being held liable for reporting inaccurate and illegal information.

4. Plaintiff also alleges individual claims against Defendant for violations of 15 U.S.C. § 1681i, which requires consumer reporting agencies to "conduct a reasonable investigation" when a consumer disputes the completeness or accuracy of any item of information in the consumer's file. 15 U.S.C. § 1681i(a)(1)(A).

## THE PARTIES

5. Plaintiff, Albert Douglas, is a resident of Richmond, Virginia, and a consumer as defined by 15 U.S.C. § 1681a(c).

---

[1] http://www.lexisnexis.com/risk/about/data.aspx (last visited on March 21, 2017).

6. Defendant LexisNexis Risk & Analytics Solutions, Inc. ("Defendant"), is a Georgia corporation doing business in the Commonwealth of Virginia. Defendant is a self-proclaimed "leader in providing essential information to help customers across industry and government assess, predict and manage risk."[2] To that end, Defendant advertises that it "offers the largest and most comprehensive base of public and proprietary information available today," including "65 billion public and proprietary records that are refreshed daily with an additional one million search records."[3] Defendant further claims to "provide coverage on more than 279 million unique identities[.]" *Id*. Accordingly, Defendant is a consumer reporting agency as defined by § 1681a.

7. Defendant offers a wide variety of data products to its customers, including a product called an "Accurint Comprehensive Report" which includes "public record, non-public information and publicly available information."[4] Defendant advertises that "Accurint provides information products that allow organizations to quickly and easily extract valuable knowledge from huge amounts of data"[5] and provides "invaluable fraud detection and identity solutions for the public and private sectors."[6]

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question. Venue is proper in this District because Plaintiff resides here, and because a substantial portion of the acts or omissions at issue occurred in this District.

---

[2] http://www.lexisnexis.com/risk/about/ (last visited on March 20, 2017).
[3] http://www.lexisnexis.com/risk/about/datasource.aspx (last visited on March 20, 2017).
[4] https://www.lexisnexis.com/privacy/for-consumers/request-personal-information.aspx (last visited on March 21, 2017).
[5] http://www.accurint.com/aboutus.html (last visited on March 21, 2017).
[6] http://www.accurint.com/hr.html (last visited on March 21, 2017).

## ALLEGATIONS RELATING TO PLAINTIFF

9.  In the summer of 2016, Plaintiff applied for a home equity loan with Capital One.

10. Plaintiff is a 100% disabled, veteran who needed to obtain additional funds since he is retired and on a fixed income.

11. Plaintiff was pre-approved for a $45,000 loan after he provided his retirement income information, and Capital One obtained his credit reports from Experian and Equifax.

12. In accordance with § 1681c of the FCRA, neither Experian nor Equifax provided any information to Capital One related to a prior bankruptcies filed by Plaintiff, which were discharged more than 10 years prior to his application for a loan with Capital One.

13. Despite his pre-approval, Capital One mailed Plaintiff a Statement of Credit Denial, or Change (the "Adverse Action Notice") on or around July 7, 2016, indicating that his request for a loan was denied.

14. In the Adverse Action Notice, Capital One identified "bankruptcy" as the sole reason for Plaintiff's credit denial.

15. The Plaintiff immediately knew something was wrong because he had not filed for a bankruptcy or obtained a bankruptcy discharge in the past ten years.

16. Further, Experian and Equifax had recently furnished Plaintiff with copies of his consumer reports, which did not list a bankruptcy.

17. After receiving the Adverse Action Notice, Plaintiff contacted Capital One to determine whether an error occurred.

18. At this time, Plaintiff spoke with a Capital One employee, Christina Grimes, who indicated that Capital One obtained a consumer report from Defendant, which contained Plaintiff's prior bankruptcies.

19. Plaintiff then contacted Defendant to dispute the information and asked whether it furnished any bankruptcy information about him to Capital One.

20. On August 22, 2016, Defendant provided a response to Plaintiff's dispute, which indicated that Defendant "verified the Bankruptcy information in question," and instructed him to contact the bankruptcy court directly if further corrections were needed.

21. Defendant's correspondence further indicated "Accurint is **NOT** a Consumer Reporting Agency, and, as such, Accurint is not governed by the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.). Accurint data is not permitted to be used to grant or deny credit, make employment decisions, or make tenant and housing screening decisions, or any other uses regulated by the Fair Credit Reporting Act."

22. After receiving the correspondence dated August 22, 2016, Plaintiff requested a copy of his complete file from Defendant.

23. In response, Defendant mailed correspondence dated September 23, 2016, enclosing a copy of Plaintiff's "Accurint Person Report" which included the bankruptcy information furnished to Capital One.

24. More specifically, the Accurint Person Report listed a bankruptcy that had been filed on October 12, 2005 and discharged on February 7, 2006. Additionally, there was another bankruptcy that was filed and discharged in 1998.

25. The report also contained his name, date of birth, social security number, address history, approximate household income, years of education, and information on previous bankruptcies he had filed.

26. Upon information and belief, Defendant provided a virtually identical Accurint Report to Capital One, which caused Plaintiff's denial.

27. Defendant again included a disclaimer indicating "Accurint is **NOT** a Consumer Reporting Agency, and, as such, Accurint is not governed by the Fair Credit Reporting Act (15 U.S.C. § 1681, et seq.). Accurint data is not permitted to be used to grant or deny credit, make employment decisions, or make tenant and housing screening decisions, or any other uses regulated by the Fair Credit Reporting Act."

28. Tellingly, despite its disclaimer that it is not a consumer reporting agency, Defendant included a copy of the "Summary of Your Rights Under the Fair Credit Reporting Act"—a disclosure required by the FCRA when a consumer reporting agency responds to a request for a file. 15 U.S.C. § 1681g(c)(2) ("A consumer reporting agency shall provide to a consumer, with each written disclosure by the agency to the consumer under this section—(A) the summary of rights prepared by the Bureau under paragraph (1)[.]").

29. Defendant's response, however, did not include other information required by § 1681g of the FCRA, including the "identification of each person" that "procured a consumer report" regarding Plaintiff within the past year. 15 U.S.C. § 1681g(a)(3)(A).

30. Defendant intentionally and systematically withholds this information from consumers in order to minimize compliance costs and so consumers do not know who obtained their consumer reports and, thus, to avoid being held liable for reporting inaccurate and illegal information.

31. It also allows Defendant's valued business partners to avoid customer service inquiries related to the reports.

## DEFENDANT'S ILLEGAL BUSINESS PRACTICES

32. Defendant is a consumer reporting agency because it "for monetary fees… regularly engages in whole or in part in the practice of assembling or evaluating consumer credit

6

information or other information on consumers for the purpose of furnishing consumer reports to third parties….” 15. U.S.C. § 1681a(f).

33. Defendant does not merely collect public record information, but rather, it assembles, filters, and formats the information as part of the services that it provides to its customers and other consumer reporting agencies.

34. Defendant's Accurint reports also meet the definition of a consumer report under the FCRA, which "is considered to have three fundamental elements." *Henderson v. Corelogic Nat'l Background Data, LLC*, 178 F. Supp. 3d 320, 325 (E.D. Va. 2016) (Payne, J.).

35. The Accurint reports satisfy the definitional elements of a consumer report because the reports are: (1) communications by a consumer reporting agency; (2) containing information bearing on consumer's credit worthiness, such as bankruptcies, civil judgments, tax liens, address history, approximate household income, years of education, and employer information.

36. Additionally, as reflected by the Adverse Action Notice, the Accurint reports satisfy the third element of the definition, which requires that the "information communicated must be 'used or expect to be used or collected in whole or in part" for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.

37. Potential lenders, like Capital One, use Defendant's Accurint reports, in part, for the purpose of serving as a factor in establishing a consumer's eligibility for credit.

38. Defendant has a contract with Capital One to allow it access to its Accurint reports.

39. Defendant is aware that Capital One's primary business is as a banking institution that regularly evaluates consumers for various forms of credit.

40. Upon information and belief, Defendant has actual notice that lenders, insurance companies and other users procure Accurint reports from Defendant for the purpose of serving as a factor in establishing a consumer's eligibility for credit.

41. In an advisory opinion issued seventeen years ago, the Federal Trade Commission ("FTC") concluded that entities providing these types of services are consumer reporting agencies within the definition set forth in the FCRA. FTC Advisory Opinion to LeBlanc, available at http://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leblanc-06-09-98. The opinion states:

> From your description of its activities, it appears that, at the very least, your company "assembles" information as this term is common understood (dictionary definitions include "to gather" or "to collect"). Your company's record searchers go to local courthouses and review the records to find information. If they find information on an individual, they forward either a brief abstract or copies of the docket information. At your headquarters, a report is prepared consisting of all the information reported by your agents from around the country. We believe that the activities you describe are sufficient to meet the definitional requirement of a CRA.

*Id*.

42. Defendant engages in a far more extensive collection and assembly process than the process described in the LeBlanc Opinion letter.

43. Additionally, the public records information is "collected in whole or in part" by Defendant for the purpose of serving as a factor in establishing a consumer's eligibility for credit, insurance or employment.

44. Defendant not only includes public records information—such as bankruptcy filings and discharges—in other reports it sells regarding consumers, but it also collects this data to sell it to each of the "Big 3" nationwide consumer reporting agencies, *i.e.,* Experian, Equifax and Trans Union.

45. Defendant knows that Experian, Equifax and Trans Union use the bankruptcy information that it provides to them for the purpose of helping to establish a consumer's creditworthiness.

46. Defendant affirmatively seeks out and collects this information, in part, pursuant to contracts with Experian, Equifax and Trans Union.

47. As a consumer-reporting agency, Defendant is required to comply with all provisions of the FCRA.

48. Defendant violates the FCRA by reporting adverse bankruptcy information that antedates the report by more than ten years from the date of the adjudication of the bankruptcy.

49. Defendant routinely furnishes outdated and obsolete information regarding consumers even though Defendant has been sued repeatedly under the FCRA for similar conduct. *Adams v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 2010 WL 1931135, at *9 (D.N.J. May 12, 2010) (denying LexisNexis's motion for judgment on the pleadings); *Berry v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 2014 WL 4403524, at *1 (E.D. Va. Sept. 5, 2014), *aff'd sub nom. Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015).

50. Defendant also violates the FCRA by refusing to "clearly and accurately" disclose to consumers all of the information in their file, including the identification "of each person" that "procured a consumer report" regarding the consumer within the past year. 15 U.S.C. § 1681g(a)(3)(A).

**ALLEGATIONS RELATING TO
RELATING TO DEFENDANT'S WILLFUL VIOLATIONS**

51. Defendant's practices violate a fundamental protection afforded to consumers under the FCRA, are contrary to the unambiguous language of the statute, and are counter to longstanding judicial and regulatory guidance. *See, e.g.,* FTC, Forty Years of Experience with the

Fair Credit Reporting Act, An FTC Staff Report with Summary of Interpretations, July 2011, at 55 ("Even if no specific adverse item is reported, a CRA may not furnish a consumer report referencing the existence of adverse information that predates the times set forth in this subsection."); *Serrano v. Sterling Testing Sys., Inc.*, 557 F. Supp. 2d 688 (E.D. Pa. 2008) (holding FCRA prohibits even alluding to existence of unreportable adverse information).

52. Defendant has both the practical capability and the legal obligation to remove outdated bankruptcy information from its Accurint reports.

53. As part of the process of assembling consumer reports, Defendant utilizes a variety of algorithms and filters to aggregate and consolidate information from a variety of sources.

54. Defendant, consistent with standard industry practices, could have written an algorithm or filter to ensure that all of its reports would exclude bankruptcy cases with disposition older than ten years.

55. It is also standard in the consumer reporting industry for consumer reporting agencies to have a purge date for information in their system that has become outdated. *See Gillespie v. Trans Union Corp.*, 482 F.3d 907, 908 (7th Cir. 2007). By failing to utilize a purge date for outdated information, Defendant's practices and procedures fall far below industry standards and constitute recklessness.

56. Instead, Defendant places its business interests above the rights of consumers and unlawfully reports such information because its client want outdated information and it is cheaper for Defendant to produce reports containing information that is not lawfully reportable than it is for Defendant to exert proper quality control over the reports prior to their being provided to Defendant's customers.

57. In sum, Defendant unlawfully reports such information because 1) it wants to maximize the automation of its report creation process, thereby saving the costs associated with conducting the additional review necessary to remove the unlawfully reported entries, and 2) the practice of unlawfully reporting such information allows Defendant to produce voluminous reports, which creates the impression to its customers that the reports contain more information than is actually included.

58. Defendant was also aware of its obligations under § 1681g.

59. Nevertheless, as a matter of common practice, Defendant did not include other information required by § 1681g of the FCRA, including the "identification of each person" that "procured a consumer report" regarding Plaintiff within the past year. 15 U.S.C. § 1681g(a)(3)(A).

60. Rather than complying with § 1681g, Defendant did so in an effort to avoid being held liable for reporting inaccurate and illegal information.

## COUNT ONE:
## Violation of 15 U.S.C. § 1681c
## CLASS CLAIM

61. Plaintiff incorporates each of the allegations in the preceding paragraphs as if set forth at length herein.

62. **The § 1681c Bankruptcy Class**. Plaintiff brings this action individually and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class (the "Bankruptcy Class") defined as follows:

> All natural persons in the United States who: (1) were subject of an Accurint Report furnished by Defendant to a third party; (2) where the report contained a bankruptcy case with disposition older than ten years.

63. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Upon information and belief, the Plaintiff alleges that the Bankruptcy Class is so numerous that joinder of the claims of all class members is

impractical. The names and addresses of the class members are identifiable through documents maintained by Defendant and through publically available court records, and the class members may be notified of the pendency of this action by published and/or mailed notice.

64. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the Bankruptcy Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include by example only and without limitation: (1) whether Defendant is a consumer reporting agency; (2) whether Defendant's Accurint Report meets the definition of a consumer report; (3) whether Defendant violated § 1681c by including outdated bankruptcy information on Accurint Reports; and (4) what is the proper measure of damages for Plaintiff and the class members.

65. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each member of the Bankruptcy Class. Plaintiff is entitled to relief under the same cause of action as the other members of the class. The procedures for credit reporting bankruptcy dispositions were the same. The willfulness evidence is the same. And the time period within which all actions relevant to this class claim took place is the same.

66. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representatives of the class, because his interests coincide with and are not antagonistic to the interests of the members of the class he seeks to represent; Plaintiff has retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. Plaintiff and their counsel will fairly and adequately protect the interests of members of the class.

67. **Superiority. Fed. R. Civ. P. 23(b)(3).** As alleged above, questions of law and fact common to the Class members predominate over questions affecting only individual members,

and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Further, individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct and the limited availability of legal representation for such prosecutions. It would be virtually impossible for the members of the class individually to redress effectively the wrongs done to them. Even if the members of the class themselves could afford such individual litigation; it would be an unnecessary burden courts across the country. In fact, it is also likely that a large number of class members may not even know of the underlying inaccuracy, not having yet discovered the uncorrected public record or otherwise reviewed their current credit report. Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

68. As explained above, Defendant violated § 1681c as to the Plaintiff and to the class by knowingly furnishing outdated and obsolete information regarding bankruptcy cases.

69. Defendant's violation of 15 U.S.C. § 1681c was willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.

70. In the alternative, Defendant's violation of 15 U.S.C. § 1681c was negligent, rendering the Defendant liable pursuant to 15 U.S.C. § 1681n.

71. As a result of Defendant's violations, Plaintiff and the class members suffered actual damages including credit denials, reputational harm, loss of income and other adverse actions.

72. Plaintiff and each class member are entitled to recover statutory damages between $100 and $1,000, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n.

## COUNT TWO:
### Violation of 15 U.S.C. § 1681g
### CLASS CLAIM

73. Plaintiff incorporates each of the allegations in the preceding paragraphs as if set forth at length herein.

74. **The § 1681g Class**. Plaintiff brings this action individually and as a class action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the following class (the "§ 1681g Class") defined as follows:

> All natural persons in the United States who: (1) who requested a copy of their file from Defendant; (2) who requested a copy of their Accurint file in response to their request; and (3) which did not include the identification of a person who procured the person's report within the past year.

75. **Numerosity. Fed. R. Civ. P. 23(a)(1).** Upon information and belief, the Plaintiff alleges that the § 1681g Class is so numerous that joinder of the claims of all class members is impractical. The names and addresses of the class members are identifiable through documents maintained by Defendant, and the class members may be notified of the pendency of this action by published and/or mailed notice.

76. **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).** Common questions of law and fact exist as to all members of the § 1681g Class. These questions predominate over the questions affecting only individual members. These common legal and factual questions include by example only and without limitation: (1) whether Defendant is a consumer reporting agency; (2) whether Defendant's Accurint Report meets the definition of a consumer report; (3) whether Defendant was required to disclose each person who

procured an Accurint Report as provided in § 1681g(a)(3); and (4) what is the proper measure of damages for Plaintiff and the class members.

77. **Typicality. Fed. R. Civ. P. 23(a)(3).** Plaintiff's claims are typical of the claims of each member of the § 1681g Class. Plaintiff is entitled to relief under the same cause of action as the other members of the class. The procedures omitting inquiries on consumes' files were the same for Plaintiff and each class member. The willfulness evidence is the same. And the time period within which all actions relevant to this class claim took place is the same.

78. **Adequacy. Fed. R. Civ. P. 23(a)(4).** Plaintiff is an adequate representatives of the class, because his interests coincide with and are not antagonistic to the interests of the members of the class he seeks to represent; Plaintiff has retained counsel competent and experienced in such litigation; and they intend to prosecute this action vigorously. Plaintiff and their counsel will fairly and adequately protect the interests of members of the class.

79. **Superiority. Fed. R. Civ. P. 23(b)(3).** As alleged above, questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy. Further, individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct and the limited availability of legal representation for such prosecutions. It would be virtually impossible for the members of the class individually to redress effectively the wrongs done to them. Even if the members of the class themselves could afford such individual litigation; it would be an unnecessary burden courts across the country. In fact, it is also likely that a large number of class members may not even know of the underlying inaccuracy, not having yet discovered the uncorrected public record or otherwise reviewed their current credit report. Furthermore, individualized litigation presents a

potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in a case.

80. As explained above, Defendant violated § 1681g by failing to include the "identification of each person" that "procured a consumer report" regarding Plaintiff and the § 1681g Class within the past year. 15 U.S.C. § 1681g(a)(3)(A).

81. Defendant's violation of 15 U.S.C. § 1681g was willful, rendering Defendant liable pursuant to 15 U.S.C. § 1681n.

82. In the alternative, Defendant's violation of 15 U.S.C. § 1681g was negligent, rendering the Defendant liable pursuant to 15 U.S.C. § 1681n.

83. As a result of Defendant's violations, Plaintiff and the class members suffered actual damages including informational injuries, reputational harm, and difficulties correcting inaccurate information in their reports.

84. The Plaintiff and each class member are entitled to recover statutory damages between $100 and $1,000, punitive damages, costs, and attorney's fees in an amount to be determined pursuant to 15 U.S.C. § 1681n.

**COUNT THREE:**
**(Violation of 15 U.S.C. § 1681i(a)(1))**
**INDIVIDUAL CLAIM**

85. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

86. Defendant violated 15 U.S.C § 1681i(a)(1) by its conduct which includes, but is not limited to, failing to conduct a reasonable reinvestigation to determine whether the disputed information was inaccurate/incomplete and to subsequently delete the information from the file.

87. As a result of this alleged conduct, Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

88. Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined pursuant to 15 U.S.C. § 1681n.

89. The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and his attorneys' fees from Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

**COUNT FOUR:**
**(Violation of 15 U.S.C. § 1681i(a)(4))**
**INDIVIDUAL CLAIM**

90. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

91. Defendant violated 15 U.S.C § 1681i(a)(4) by its conduct which includes, but is not limited to, failing to review and consider all relevant information that it received in Plaintiff's communications.

92. As a result of this alleged conduct, Plaintiff suffered actual damages, including but not limited to damage to her credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

93. Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

94. The Plaintiff is therefore entitled to recover actual damages, statutory damages, punitive damages, costs, and his attorneys' fees from the Defendant pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

**COUNT FIVE:**
**(Violation of 15 U.S.C. § 1681i(a)(5))**
**INDIVIDUAL CLAIM**

95. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

96. Defendant violated 15 U.S.C § 1681i(a)(5) by its conduct which includes, but is not limited to, failing to delete any information that was the subject of Plaintiff's disputes and that was inaccurate or could not be verified.

97. As a result of this alleged conduct, Plaintiff suffered actual damages, including but not limited to damage to his credit rating, lost opportunities to enter into consumer credit transactions, denial of credit and aggravation, inconvenience, embarrassment and frustration.

98. Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

99. The Plaintiff is entitled to recover actual damages, statutory damages, costs, and his attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and/or 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff moves for judgment against the Defendant for himself and on behalf of the defined classes against the Defendant as alleged for statutory and punitive damages; for equitable and injunctive relief; and for attorneys' fees and costs and such other relief the Court does find just and appropriate. As for his individual claims, Plaintiff moves for judgment against

Defendant and for his actual and/or statutory damages, punitive damages, attorneys' fees and costs, and for such other relief the Court does find just and appropriate.

    **TRIAL BY JURY IS DEMANDED**.

                                                      Respectfully submitted,
                                                      **ALBERT DOUGLAS**

                                          By: */s/ Kristi C. Kelly*
                                                      Counsel

Kristi Cahoon Kelly, VSB #72791
Andrew J. Guzzo, VSB #82170
KELLY & CRANDALL, PLC
3925 Chain Bridge Road, Suite 202
Fairfax, VA 22030
(703) 424-7570 – Telephone
(703) 591-0167 – Facsimile
E-mail: kkelly@kellyandcrandall.com
E-mail: aguzzo@kellyandcrandall.com
*Counsel for Plaintiff*